IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DOROTHY LOTENERO,** )<br>　　　　　　　　　　　　　　)<br>　　　　Plaintiff,　　　　　)<br>　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>**EVERETT FINANCIAL INC., et al.,** )<br>　　　　　　　　　　　　　　)<br>　　　　Defendants.　　　　　)<br>　　　　　　　　　　　　　　) | 1:11-CV-200 AWI SMS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. #8] |

**INTRODUCTION**

On April 14, 2011, Plaintiff Dorothy Lotenero filed a First Amended Complaint ("FAC") against Defendants Everett Financial, Inc., dba Supreme Lending ("Supreme Lending"), Great American Insurance Co. ("Great American"), and Jesse Alvin Cripps, Sr. ("Cripps"). On May 4, 2011, Supreme Lending and Great American filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  In other words, leave to amend need not be granted when amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## ALLEGED FACTS

In 1999, Plaintiff obtained a reverse mortgage in order for her to stay in her home located at 3332 W. Millcreek Drive in Visalia, California.  FAC at ¶¶ 1, 7.  Under the terms of the

reverse mortgage, Plaintiff was not required to make monthly payments to her lender for as long as she remained in her home. Id. at ¶ 7. In addition, the amount owed on her reverse mortgage was payable only after Plaintiff died or elected to move away. Id.

Cripps was employed by Supreme Lending as the manager of Supreme Lending's branch office in Visalia, California. Id. at ¶ 3. On or about February 7, 2007, Cripps, acting on behalf of Supreme Lending, sought out Plaintiff at her church and persuaded her to refinance her reverse mortgage in a larger amount. Id. at ¶ 8. Cripps falsely represented to Plaintiff that she was receiving a new, larger reverse mortgage. Id. Cripps also informed Plaintiff that she would receive $48,000 cash from this new mortgage. Id. Cripps knew that this representation was false because the new mortgage that he was arranging for Plaintiff was not a reverse mortgage, but actually a World Savings' subprime pick-a-pay mortgage. Id. at ¶ 9.

Thereafter, Plaintiff signed the application for the World Savings' subprime pick-a-pay mortgage. Id. at ¶ 10. Plaintiff received $48,278 in cash upon the closing of escrow for the new mortgage. Id. Cripps advised Plaintiff that it would be in her best interest to allow him to establish a savings account for her. Id. Plaintiff endorsed the check for $48, 278 to Cripps. Id. Cripps accepted the check as agent for Supreme Lending and deposited the check in the account of a fictitious entity "Horizontal Financial" in Carson City, Nevada. Id. After Plaintiff was unable to locate Cripps or the bank account that Cripps was supposed to have established for her, Plaintiff filed a report with the Visalia Police Department. Id. at ¶ 11. The Visalia Police Department referred the matter to the Federal Bureau of Investigation. Id. On November 10, 2010, Cripps was indicted by a grand jury for the Eastern District of California. Id. Cripps was later apprehended and arrested in Texas. Id.

Beginning on or about April 1, 2007, Plaintiff made the monthly payments on her new mortgage for approximately 20 months. Id. at ¶ 12. After Plaintiff was unable to make her monthly payments, Wells Fargo recorded a Notice of Default on March 26, 2010 and then recorded a notice that the trustee's sale would be held on July 19, 2010. Id. On or about

3

February 1, 2011, Wells Fargo agreed to cancel the foreclosure on the condition that Plaintiff agree to pay a reduced monthly amount for an additional fourteen years beyond the maturity date of the loan.  Id.

**DISCUSSION**

1. Causes of action against Supreme Lending

    A. Breach of contract

In the first cause of action, Plaintiff brings a claim for breach of contract.  In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  Williams v. Bank of Am., No. 2:09-CV-3060-JAM-KJM, 2010 WL 3034197, at *4 (E.D. Cal. Jul. 30, 2010) (quoting CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008)).

The FAC is unclear as to what contract is in dispute.  Plaintiff asserts in the opposition that the contract at issue is the February 7, 2007 loan application that was entered into between Plaintiff and Cripps.  Opposition at 3:16.  Plaintiff contends that the loan application was breached when Cripps wrongfully took Plaintiff's money and states that Supreme Lending is responsible for the conversion of Plaintiff's money by Cripps.  Id. at 3:16-18, 4:12-13.  Conversion, however, is a tort and is not cognizable under a breach of contract theory.

Thus, Plaintiff has not alleged in the FAC what provision of the loan application was breached or how it was breached by Supreme Lending.  Moreover, Plaintiff has not alleged any damages that resulted from any breach of the loan application.  Therefore, Plaintiff has not stated a claim for breach of contract against Supreme Lending.  Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim is GRANTED without prejudice and with leave to amend.  Any amended breach of contract claim must allege facts indicating how the February 7, 2007 loan application was breached by Supreme Lending and what damages occurred as a result of that breach.

In addition, Plaintiff's opposition suggests that she is asserting that Supreme Lending is liable for Cripps' torts based on a respondeat superior theory. Plaintiff is granted leave to amend in order to bring causes of action based on this theory.

B.      Financial abuse of an elder

In the second cause of action, Plaintiff brings a claim for financial abuse of an elder. Cal. Welf. & Inst. Code § 15610.30.[1] The California Legislature enacted the Elder Abuse Act in order to "protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." Negrete v. Fid. & Guar. Life Ins. Co., 444 F. Supp. 2d 998, 1001 (C.D. Cal. 2006). A person is considered an "elder" under the Elder Abuse Act if the person is sixty-five years of age or older. Cal. Welf. & Inst. Code § 15610.27.

Section 15610.30 of the Elder Abuse Act provides that financial abuse of an elder occurs when a person or entity "takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1). Under the same section, a person who assists in the foregoing conduct is also liable. Id. at § 15610.30(a)(2).

A person or entity is "deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith." Id. at § 15610.30(b). A person or entity "is deemed to have acted in bad faith if the person or entity knew or should have known that the elder . . . had the right to have the property transferred or made readily available to the elder . .. or to his or her representative." Id. at § 15610.30(b)(1). A person or entity should have known of such a right "if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the elder . . . has [such] a right." Id. at § 15610.30(b)(2).

---

[1] Plaintiff's allegations against Supreme Lending occurred during 2007. Thus, the Court is citing to the version of the Elder Abuse Act that was operative at the time of the alleged conduct.

An instructive case is Zimmer v. Nawabi, 566 F. Supp. 1025 (E.D. Cal. 2008). In Zimmer, plaintiff, a seventy-nine year old woman, applied for a loan from defendant Golden State Financing Corporation ("Golden State"). Id. at 1026. After plaintiff was approved for a loan, defendant Tim Nawabi ("Nawabi), a Golden State employee, met with plaintiff to execute the loan documents. Id. At the meeting, Nawabi informed plaintiff that her refinance would result in a single loan with a monthly payment of $2400.00 for the first month and $1500.00 for each month thereafter and receipt of $29,000.00 in cash at the close of escrow. Id. At the close of the meeting, Nawabi instructed plaintiff to sign the loan documents without reading them, which plaintiff did. Id. at 1027. Contrary to Nawabi's representations, plaintiff actually had taken out two loans. Id. Plaintiff's refinance resulted in a monthly payment of $3,316.26 per month and receipt of only $4,326.87 in cash at the close of escrow. Id. Plaintiff also had to pay a $18,782.50 prepayment penalty to her previous lender. Id. These loan terms were less advantageous to plaintiff than the mortgage she had prior to refinance. Id.

The court granted plaintiff's motion for summary judgment with respect to her financial abuse of an elder claim against Golden State. The court held that Golden State was liable under section 15610.30(a)(1) because "Golden State received $10,700.00 in fees, which it wrongfully obtained as a result of Nawabi's false statements about the terms of plaintiff's refinance, which it knew were less favorable to plaintiff than her previous mortgage." Id. at 1034.

In this case, Plaintiff similarly alleges that Cripps falsely represented the terms of Plaintiff's new mortgage, which resulted in loan terms that were less advantageous to Plaintiff than the mortgage she had prior to the refinance. FAC at ¶¶ 8-9. However, unlike Zimmer, Plaintiff has not alleged that Supreme Lending took, secreted, appropriated, obtained or retained any real or personal property from Plaintiff. Plaintiff merely alleges that she was deprived of her "right to live in her home without mortgage payments for the rest of her life" and her "right to

receive the cash value of her home equity of $48,278."[2] FAC at ¶ 20. These alleged rights are not real or personal property rights that give rise to a financial abuse of an elder claim. Therefore, Plaintiff has not stated a claim for financial abuse of an elder. Accordingly, Defendants' motion to dismiss Plaintiff's financial abuse of an elder claim is GRANTED without prejudice and with leave to amend.

The Court notes that Plaintiff's FAC uses statutory language from the wrong version of section 15610.30. Plaintiff's FAC cites to language from the most current version of section 15610.30, which became effective on January 1, 2009. Plaintiff's allegations against Supreme Lending occurred during 2007. The Court instructs Plaintiff that any amended financial abuse of an elder claim must be based on a violation of the version of section 15610.30 that was operative during 2007. See Das v. Bank of Am., N.A., 186 Cal. App. 4th 727, 736-37 (2010) (concluding that the 2008 amendments to the Elder Abuse Act were not retroactive because the amendments were substantive, rather than procedural, and the California Legislature did not state that the amendments were retroactive in effect). Furthermore, any amended financial abuse of an elder claim must allege facts indicating that Supreme Lending took, secreted, appropriated, obtained or retained *real or personal* property from Plaintiff.

      C.      Unfair Competition Law

In the third cause of action, Plaintiff brings a claim under California's unfair competition law ("UCL"). Cal. Bus. & Prof. Code § 17200. The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as

---

[2] The Court notes that Plaintiff's allegation that she was deprived of her right to receive the $48,278 cash value of her home equity is contradicted by her allegation that she received $48,278 in cash at the close of escrow. FAC at ¶ 10.

unfair or deceptive even if not unlawful and vice versa." Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotation marks and citations omitted).

An action based on an "unlawful" business act occurs when there is a violation of almost any federal, state or local law. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). An "unfair" business act under the UCL is "conduct that threatens an incipient violation of anti-trust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, 20 Cal. 4th at 187. A "fraudulent" business act under the UCL occurs when "members of the public are likely to be deceived." Kasky, 27 Cal. 4th at 951.

The FAC is unclear as to whether Plaintiff is asserting an unlawful, unfair or fraudulent business act or practice against Supreme Lending. Plaintiff clarifies in her opposition that she is bringing an unfair business practice claim. Opposition at 6:2. Plaintiff fails to state a claim for an unfair business practice because Plaintiff has not alleged any facts in the FAC indicating how Supreme Lending's conduct threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws. Accordingly, Defendants' motion to dismiss Plaintiff's unfair business practices claim is GRANTED without prejudice and with leave to amend.

   D. Breach of fiduciary duties

Although not listed as a cause of action, Plaintiff alleges within her claims for breach of contract and financial abuse of an elder that Supreme Lending violated its fiduciary duties owed to Plaintiff. FAC at ¶¶ 16, 21. Under California law, a mortgage loan broker acts in a fiduciary capacity that "not only imposes upon him the duty of acting in the highest good faith toward his principal but precludes the agent from obtaining any advantage over the principal in any transaction had by virtue of his agency." Wyatt v. Union Mortg. Co., 24 Cal. 3d 773, 782 (1979). This duty obligates brokers to "make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith towards their principals." Id. A "broker is

liable as a matter of law for all damages caused to third persons by the tortious acts of the salespersons committed within the course and scope of employment." Cal. Real Estate Loans, Inc. v. Wallace, 18 Cal. App. 4th 1575, 1581 (1993).  To the extent that Plaintiff is attempting to bring a cause of action for breach of fiduciary duties against Supreme Lending, Plaintiff is granted leave to amend.

2.  Causes of action against Great American

Plaintiff asserts in the FAC that she is bringing her causes of action for breach of contract, financial abuse of an elder and unfair business practices against Great American.  FAC at 6:3, 6:23 and 8:3.  However, the only allegations in the FAC against Great American relate to Great American issuing a surety bond in connection with Supreme Lending's application for a license to do business in California.  FAC at ¶¶ 4, 28-29.  Plaintiff has brought a suretyship claim against Great American in the fourth cause of action, which will be addressed below.  Therefore, Plaintiff has not stated a claim against Great American for breach of contract, financial abuse of an elder or unfair business practices.  Accordingly, Defendants' motion to dismiss these causes of action against Great American is GRANTED.

In the fourth cause of action, Plaintiff brings a suretyship claim against Great American. Plaintiff alleges that Supreme Lending was required to maintain a surety bond under California Financial Code § 50205 in order to be used for the recovery of losses or damages incurred by borrowers or consumers.  FAC at ¶ 28.  Plaintiff alleges that the surety bond provides that "any person who sustains an injury covered by this bond may . . . bring an action in his or her own name upon this bond for the recovery of any damages sustained[.]"  Id. at ¶ 29.  Plaintiff states in the opposition that she has plead sufficient facts to allege liability against Supreme Lending and therefore may collect under the Great American bond.  Opposition at 6:11-12.  However, as discussed above, Plaintiff has failed to state a claim against Supreme Lending.  Therefore, Plaintiff's suretyship claim against Great American also fails.  Accordingly, Defendants' motion to dismiss Plaintiff's suretyship claim against Great American is GRANTED without prejudice

and with leave to amend.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED consistent with this order. Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

Dated:   June 16, 2011

CHIEF UNITED STATES DISTRICT JUDGE