Philip C. Bourdette #47492
Bourdette & Partners
2924 W. Main Street
Visalia, CA 93291
559-625-8425
pcbb@bourdettelaw.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| Dorothy Lotenero | No. 1:11-cv-00200-AWI-SMS |
|---|---|
| Plaintiff, | SECOND AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; ELDER FINANCIAL ABUSE; UNFAIR COMPETITION; SURETYSHIP |
| v. | |
| Everett Financial Inc., dba Supreme Lending, a Texas corporation; Jesse Alvin Cripps, Sr.; Great American Insurance Co. | JURY TRIAL DEMANDED |
| Defendants | |

//
//
//
//

1

//

## THE PARTIES

1. Plaintiff Dorothy Lotenero is an 81 year old homeowner who lives alone at 3332 W. Millcreek Drive in Visalia, California. Plaintiff and her deceased husband purchased this home 38 years ago and Plaintiff has resided there continuously since that time. Plaintiff's home was re-mortgaged and foreclosed upon as a result of the actions of Defendants and Plaintiff has been required by the third party lender to incur financially burdensome monthly payments for the rest of her life to prevent the loss of her home.

2. Defendant Everett Financial, Inc., dba Supreme Lending is a mortgage lender with its principal place of business in Dallas, Texas and is licensed by the California Commissioner of Corporations ["the Commissioner"] to do business in California in accordance with the provisions of the California Residential Mortgage Lending Act [CRMLA] [Cal. Financial Code, § 50000, et seq.]. In addition to license No. 4130655 issued to this corporate parent company in Dallas, Texas, this corporate parent, by letter dated Nov. 29, 2006, applied to the Commissioner for a license to operate a branch office known as Branch 557 at 5020 W. Mineral King Ave. in Visalia, California. By letter of Dec. 14, 2006, the Commissioner authorized the establishment of that branch office in Visalia and assigned the separate license number 813-B-417 to that branch. All activities relevant to Plaintiff's claims against Defendant Supreme Lending occurred in Visalia in January and February, 2007. On May 21, 2007, the Commissioner, at the request of Supreme Lending, authorized the transfer of branch office license number 813-B-417 from Visalia, California, to an address in Austin, Texas. Cripps was an employee of Defendant Supreme Lending and was acting within the course and scope of his employment at all times alleged in this complaint and Supreme Lending is responsible for the acts of Cripps as alleged herein.

3. Defendant Jesse Alvin Cripps, Sr., resided in the Eastern District of California while he met with Plaintiff where he was employed by Defendant Supreme Lending as the manager of Supreme Lending's branch office No. 557 at 5020 W. Mineral King Ave. in Visalia, California.

Plaintiff is informed and believes that Cripps now resides in Texas. Cripps acted in the capacity of an employee of Supreme Lending as Cal. Financial Code sec. 50700 (d) prohibits Supreme Lending from conducting loan brokerage services through independent contractors.  On May 2, 2005, the Securities and Exchange Commission found that Cripps had defrauded customers and issued its order permanently barring Cripps from any association with any securities dealer in any capacity whatsoever. [Exhibit A].

4. Defendant Great American Insurance Co. an Ohio corporation, on June 28, 2004, issued its surety bond No. 1-76-90-93-092-CA in the amount of $50,000 and delivered said bond to the California Commissioner of Corporations in connection with Defendant Supreme Lending's application for a license to do business in California. [Exhibit B].  In accordance with Sec. 50205 of the Cal. Financial Code Defendant Supreme Lending was required to maintain such bond in force "to be used for the recovery . . . of losses or damages incurred by borrowers or consumers."

### JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The claims asserted herein are in excess of $75,000.00.

6. Venue is proper in this District because the events giving rise to the action occurred in this District.

STATEMENT OF FACTS

7. After Plaintiff Dorothy Lotenero's husband died her Social Security and pension income declined to $1,600 per month and she could no longer afford to make mortgage payments.   In 1999, Plaintiff got a reverse mortgage to make it possible for her to stay in her home for the rest of her life.   Under the terms of the reverse mortgage Plaintiff was not required to make monthly payments to her lender for as long as she remained in her home.   The amount owed on her reverse mortgage was payable only after Plaintiff died or elected to move away.

8. On or about Feb. 7, 2007, Defendant Cripps, acting on behalf of Defendant Supreme Lending, sought out Plaintiff at her church and persuaded her to refinance her reverse mortgage

in a larger amount and he presented Plaintiff with a loan application that he had prepared for that purpose. [Exhibit C]. Cripps falsely represented to Dorothy Lotenero that if she signed the loan application she would get a new, larger reverse mortgage. Cripps also informed Plaintiff that she would receive over $48,000 cash from this new mortgage.

9. Cripps knew that this representation was false and that the new mortgage that he was arranging with World Savings was not a new reverse mortgage but a subprime Pick-a-Pay mortgage with monthly payments starting at $745 and increasing rapidly. The payments will rise to $2,051 (or $400 more than Plaintiff's total income) in the eleventh year when Plaintiff will be 88 years old.

10. Dorothy Lotenero trusted Cripps as an assistant pastor at her church and signed the application for World Savings' Pick-a-Pay mortgage. The new mortgage closed on February 13, 2007. She received $48,278 in cash upon the closing of the escrow for the new mortgage. Cripps advised Dorothy Lotenero that it would be in her best interest to allow him to establish a savings account for her in that amount. Lotenero endorsed the check for $48,278 to Cripps for deposit in a savings account and soon thereafter Cripps left Visalia. [Check, Exhibit D]. Cripps deposited the check in the account of a fictitious entity "Horizon Financial" in Carson City, NV. Cripps acceptance of the check as agent for Supreme Lending was in violation of Cal. Financial Code sec. 50204 *Acts prohibited to licensees*" which provides that a licensee may not "disburse the mortgage loan proceeds in a form other than direct deposit to the borrower's account."

11. On or about September 18, 2007 when Lotenero was unable to locate Mr. Cripps or the bank account that Cripps was supposed to have established for her she filed a report with the Visalia Police Dept. (Exhibit E). The Visalia Police Dept. referred the matter to the Federal Bureau of Investigation. It was not until September 2007 that Lotenero discovered the acts of Cripps and Supreme Lending that give rise to this lawsuit. On Nov. 10, 2010, Cripps was indicted by the Grand Jury for the Eastern District of California and he was apprehended and arrested in Texas. The indictment states, in part:

*"17. Many of the investors who invested money took their monies from retirement, inheritance, insurance settlements, equity in their homes and/or IRAs. Some of the investors were elderly and knew Defendant from contacts at church. As a result of the purported*

*investment of their monies with Defendant CRIPPS, most investors lost their entire investment and many lost their entire life savings and retirement."*

12. Lotenero took in a lodger and with that additional income she was able to make the monthly payments on this new mortgage for approximately 20 months beginning on or about April 1, 2007.  When Lotenero was no longer able to make payments Wells Fargo recorded a Notice of Default on March 26, 2010, and thereafter recorded notice that the Trustee's Sale would be held on July 19, 2010.  Plaintiff suffered severe mental anguish over a period exceeding one year as Wells Fargo Bank repeatedly refused to assent to her request that the loan payments be reduced to an amount that Plaintiff could afford to pay.  Finally, on or about Feb. 1, 2011, Wells Fargo Bank agreed to cancel the foreclosure on the condition that Plaintiff agree to pay a reduced monthly amount for an additional period of fourteen (14) years beyond the original maturity date of the loan.

13.  Defendants Cripps and Supreme Lending violated the provisions of the statute under which they were licensed, as follows: [all references to the Cal. Financial Code, §50,000, et seq.] (a) The amounts paid to Plaintiff by the lender at close of escrow were not deposited to Plaintiff's account secured by FDIC insurance. (Sections 50124, 50202, 50204);
(b) Defendants Cripps and Supreme Lending committed "acts prohibited to licensees" by §50204, as follows:

(i) they disbursed the loan proceeds in a form other than direct deposit to the borrower's account (50204[a]);

(ii) they engaged in fraudulent home mortgage underwriting practices in that the loan application prepared by them did falsify the monthly income of Plaintiff and her ability to make loan payments (50204[g]);

(iii) they engaged in acts in violation of Section 17200 of the Business and Professions Code (50204[i]);

(iv) they knowingly misrepresented, circumvented and concealed material  information, through subterfuge or device, relating to the classification of Plaintiff's new mortgage as a reverse mortgage (50204[j]);

and (v) they engaged in fraud and dishonest dealings (50204[k]);

5

(c) Defendant Supreme Lending violated sec. 50317 in that it did employ Cripps, a person who had been barred from employment in the securities industry, after having been held liable in an administrative judgment by the Securities and Exchange Commission for offenses involving theft, embezzlement, fraud, fraudulent conversion or misappropriation of property. (Exhibit A);

(d) Defendant Supreme Lending violated sec. 50503 in that it did knowingly or recklessly direct, participate in and aid and abet in an activity that constitutes theft or fraud and knowingly and recklessly made misstatements or omissions of a material fact pertaining to a loan.

## FIRST CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY
### (Against Defendants Supreme Lending and Cripps)

14. Plaintiff realleges, adopts, and incorporates the previous paragraphs as though fully set forth herein.

15. Sec. 50701 of the Cal. Financial Code required Supreme Lending to enter into a written loan brokerage agreement with Plaintiff before performing any brokerage services. That section specifies the required provisions of such agreement and provides that the required provisions will be implied by operation of law if they are omitted from the agreement. Sec. 50701, in effect at the time of this transaction, provided as follows:

"50701. (a) As soon as practical after a borrower requests that the residential mortgage lender licensee arrange a loan to be made by another institutional lender, and before the licensee performs brokerage services for the borrower, the licensee and borrower shall enter into a written loan brokerage agreement that satisfies the requirements of this section.

(b) Both the licensee's authorized representative and the borrower shall sign and date the loan brokerage agreement, and the licensee shall deliver a copy of the fully executed loan brokerage agreement to the borrower either upon execution, if the documents are signed in the licensee's office, or within three business days after execution.

(c) The loan brokerage agreement shall contain an explicit statement that (1) the licensee is acting as the agent of the borrower in providing brokerage services to the borrower, and (2) when acting as agent for the borrower, it owes to that borrower a fiduciary duty of utmost care, honesty, and loyalty in the transaction, including the duty of full disclosure of all material facts. If the licensee is authorized to act as an agent for any other person, the brokerage agreement shall contain a statement of that fact and identification of that person.

(d) The loan brokerage agreement shall contain a detailed description of the services the licensee agrees to perform for the borrower, and a good faith estimate of any fees the licensee will receive for those services, whether paid by the borrower, the institutional lender, or both.

(e) The loan brokerage agreement shall carry a clear and conspicuous statement of the conditions under which the borrower is obligated to pay the licensee for brokerage services rendered under the agreement.

(f) The loan brokerage agreement shall provide that, if the licensee makes a materially false or misleading statement or omission in the inducement or implementation of the agreement, the borrower may, in addition to any other legal rights or remedies, upon written notice, do any of the following:

(1) Rescind the brokerage agreement.

(2) Recover fees paid by the borrower to the licensee for brokerage services rendered by the licensee pursuant to the agreement.

(3) Recover actual costs, including attorney's fees, for enforcing the borrower's rights under the loan brokerage agreement.

(h) If the loan brokerage agreement fails to set forth the rights in subdivision (g), these rights shall be implied by operation of law.

(i) The loan brokerage agreement shall be the only agreement between the borrower and the licensee with respect to a single loan.  . . ."

16. Supreme Lending and Cripps failed to provide this mandatory loan brokerage agreement to Dorothy Lotenero.  Instead, Supreme Lending entered into a "Mortgage Loan Origination Agreement" with Dorothy Lotenero.  That Agreement contained none of the statutory provisions designed for the protection of the borrower.  That Agreement failed to include the following statutory requirements:

(a) instead of acknowledging that defendants were Lotenero's agents, this Agreement states that defendants *"are acting as an independent contractor and not as your agent."*

(b) the Agreement omits the required statement that Supreme Lending, as the licensee, *"owes to that borrower a fiduciary duty of utmost care, honesty, and loyalty in the transaction, including the duty of full disclosure of all material facts."*

(c) there is no statement of the fees that Supreme Lending will receive from Dorothy Lotenero and from the lender; (in fact, according to the Borrower Final Closing Statement, (Exhibit F attached hereto) Supreme Lending received $3,325 from Dorothy Lotenero and $3,045 from the lender World Savings);

(d) the Agreement omits the statement of the legal rights that Dorothy Lotenero will have if defendants make a *"materially false or misleading statement or omission in the inducement or implementation of the agreement."*

17. Supreme Lending breached its fiduciary duty to Dorothy Lotenero, in that it did not act with the utmost care, honesty and loyalty toward her, but acted in a manner adverse to her, as follows:

(a) Supreme Lending engaged Cripps to act as its representative in Visalia, and obtained for him a license for an office in Visalia, though Supreme Lending knew or should have known that Cripps had a history of dishonest financial dealings with customers. Cripps held no license of any kind and could not have acted without the license and support provided by Supreme Lending. A simple Google search of Cripps' name leads to the database of the Financial Industry Regulatory Authority, and the report of "Disciplinary and Other NASD Actions" for July 2005, wherein it is reported that Cripps had been "barred from association with any NASD member in any capacity." (See Exhibit A).

(b) Supreme Lending did not advise Dorothy Lotenero of the true nature of her loan, nor that it was not a reverse mortgage, and did not disclose to her that her loan payments would increase each year, starting at $745 per month and increasing to $2,051 per month (an amount that was $400 greater than her total income of $1,651 per month).

(c) Supreme Lending did not inform Dorothy Lotenero that she was completely safe from foreclosure with her existing reverse mortgage and that she would be subject to foreclosure if she could not keep up with the escalating monthly payments on the new loan.

(d) Supreme Lending sought to mislead Dorothy Lotenero with a "good faith estimate" stating that the loan origination fee was one percent when in fact Supreme Lending charged one percent plus $1,295. The good faith estimate also stated that the lender World Savings was going to pay Supreme Lending an "YSP" (yield spread premium) of two percent of the loan amount. Supreme Lending failed to inform Dorothy Lotenero that this YSP was a kickback or bonus paid by the lender as a reward to Supreme Lending for causing Dorothy Lotenero to agree to pay a higher interest rate than the rate ordinarily required by that lender.

(e) Supreme Lending caused and/or permitted Dorothy Lotenero to sign a loan application on Jan. 8, 2007, even though the entry for her income was completely blank. Dorothy Lotenero had no knowledge or experience that would have caused her to recognize such a defect. Thereafter, at the loan closing on Feb. 13, 2007, Supreme Lending substituted an altered loan application for signature by Dorothy Lotenero. This altered application showed that Dorothy Lotenero had no

employment and no investment income, retirement income or pension income but this altered application had been falsified to show "other income" of $4,000 per month from an unspecified source. (see Exhibit C).  Dorothy Lotenero had no opportunity to read this altered loan application because it was presented to her for signature along with approximately 30 other documents that she was required to sign without any opportunity to read them.

(f) Supreme Lending further breached its fiduciary duty of utmost care to Dorothy Lotenero in that it caused or permitted the falsified loan application to be submitted to the lender World Savings without communicating with Dorothy Lotenero to verify that, subsequent to the original loan application dated Jan. 8. 2007, but prior to the signing of the loan documents on Feb. 7, 2007, Dorothy Lotenero had acquired "other income" of $4,000 per month.

(g) On Nov. 29, 2006, Supreme Lending applied to the California Commissioner of Corporations for a license for a new branch office in Visalia, California.  The Commissioner approved this application by letter dated Dec. 14, 2006.  Dorothy Lotenero's original loan application was dated 25 days later on Jan. 8, 2007. Supreme Lending further breached its fiduciary duty of utmost care to Dorothy Lotenero in that it failed to review and to approve loan applications originated by its new agent in Visalia.

18. Plaintiff has been damaged by the acts of Defendants for general damages according to proof, special damages of more than $75,000 ($48,278 proceeds taken by Cripps as an employee of Supreme Lending, $6,370 fees paid to Supreme Lending through escrow, monthly mortgage payments made by Plaintiff on the new loan and for future payments for forty years). Plaintiff is also entitled to Exemplary Damages as Cripps and Supreme Lending committed these acts recklessly, oppressively, fraudulently and with malice in an amount according to proof.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT
### (Against Defendants Supreme Lending and Cripps)

19. Plaintiff realleges, adopts, and incorporates the previous paragraphs as though fully set forth herein.

20. Defendants Supreme Lending and Cripps prepared numerous documents for this loan, including but not limited to Exhibit C attached to this complaint, but these documents did not include the provisions required by California Financial Code § 50701 and accordingly the true contract between these parties must be deemed to incorporate the provisions implied by law in accordance with Sec. 50701 (g). Defendants Supreme Lending and Cripps breached this contract by their actions and failures to act as specifically alleged in the First Cause of Action. "Breach of Fiduciary Duty."

21. Plaintiff has been damaged by the acts of Defendants for general damages according to proof, special damages of more than $75,000 ($48,278 proceeds taken by Cripps as an employee of Supreme Lending, $6,370 fees paid to Supreme Lending through escrow, monthly mortgage payments made by Plaintiff on the new loan and for future payments for over thirty years). Plaintiff is also entitled to Exemplary Damages as Cripps and Supreme Lending committed these acts recklessly, oppressively, fraudulently and with malice in an amount according to proof. in an amount according to proof.

THIRD CAUSE OF ACTION – ELDER FINANCIAL ABUSE

(Against Defendants Supreme Lending and Cripps)

22. Plaintiff realleges, adopts, and incorporates the previous paragraphs as though fully set forth herein.

23. At the time of this loan transaction, Section 15610.30 of the Cal. Welfare and Institutions Code provided that financial abuse of an elder occurs when a person or entity does (or assists in doing) any of the following: *"takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."*

24. A person or entity is *"deemed to have taken, secreted, appropriated, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property in bad faith."* A person or entity is *"deemed to have acted in bad faith if the person or entity knew or should have known that the elder . . . had*

*the right to have the property transferred or made readily available to the elder . . . ."* A person or entity should have known of such a right *"if, on the basis of the information received by the person or entity or the person or entity's authorized third party, or both, it is obvious to a reasonable person that the elder . . . has [such] a right."* (id at Sec. 15610.30(b)(2).

25. Defendant Supreme Lending charged Dorothy Lotenero broker's fees of $3,325 for the refinancing of her reverse mortgage, and that amount was paid to Supreme Lending out of Dorothy Lotenero's funds in escrow.

26. When Supreme Lending received the loan application prepared by its agent Cripps, and submitted this application to the lender World Savings, Supreme Lending knew that the loan would pay off and cancel the reverse mortgage that enabled Plaintiff to live in her home free of the burden of monthly mortgage payments. On the face of the loan application Supreme Lending saw why Plaintiff needed this reverse mortgage: (a) she was 77 years old, a widow, and she lived alone; (b) she had no stocks, bonds or automobile; (c) she received no dividends, interest or rental income and (d) she had no vested interest in a retirement fund. Defendant Supreme Lending violated its fiduciary duty to Plaintiff when it arranged the cancellation of her reverse mortgage without advising her of the extremely adverse consequences of this action.

27. Only defendants know which of the two mortgage applications they submitted to the lender World Savings. In the application dated Jan. 9, 2007 (attached as Exhibit A to Defendants' Request for Judicial Notice) Supreme Lending falsely represented that plaintiff had no income. In the application dated Feb. 7, 2007 (attached as Exhibit C)  Supreme Lending falsely stated that Plaintiff's income was $4,000 per month.  Supreme Lending represented that this amount was true, although it did not possess and did not seek any verification that this amount was true.  The loan application showed and Supreme Lending knew that Plaintiff had no possible source of income in that amount.  The falsification of Plaintiff's income was a crime under 18 U.S.C. 1001 and Cal. Penal Code 532 (a) (f).

28. Plaintiff has been damaged by the acts of Defendants for general damages according to proof, special damages of more than $75,000 ($48,278 proceeds taken by Cripps as an employee of Supreme Lending, $6,370 fees paid to Supreme Lending through escrow, monthly mortgage

payments made by Plaintiff on the new loan and for future payments for over thirty years). Plaintiff is also entitled to Exemplary Damages as Cripps and Supreme Lending committed these acts recklessly, oppressively, fraudulently and with malice in an amount according to proof. Plaintiff is also entitled to attorneys fees per Welfare and Institutions Code § 15657.5.

## THIRD CAUSE OF ACTION – UNFAIR COMPETITION LAW
### (California Business & Professions Code sec. 17200)
### (Against Defendants Supreme Lending and Cripps)

29. Plaintiff realleges, adopts, and incorporates the previous paragraphs as though fully set forth herein.

30. "Unfair competition" under sec. 17200 encompasses all of the following: (1) an unlawful business act or practice; (2) an unfair business act or practice; and (3) a fraudulent business act or practice; the definitions in Section 17200 are disjunctive. Each of these wrongs operates independently from the others. A practice is prohibited as unfair or fraudulent even if not unlawful and vice versa.

31. The determination whether a business practice is unfair involves an examination of the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. The court must weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim.

32. California has adopted Federal Trade Commission ("FTC") guidelines. Under this standard, a business act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

33. Section 17203 describes judicial remedies for unfair conduct, as follows: "The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

34. Defendants, Supreme Lending and Cripps, committed the following acts of unfair business practices, as defined by Business and Professions Code section 17200, et seq. by falsely

telling plaintiff that she was getting a new reverse mortgage and instead obtaining a thirty year mortgage, charging her loan fees without properly disclosing them, taking $48,278 of plaintiffs money from the loan closing and not providing proper documents to plaintiff that conform to the provisions of the California Financial Code . These Defendants' actions, as described above, evidence lack of good faith, honesty in fact and observance of fair dealing, so as to constitute unconscionable commercial practices

35. Defendants' engaged in fraudulent business practices to stimulate the promotion and use of their products and gain an unfair advantage over consumers and other mortgage brokerage companies. As a direct and proximate result of the defendants' conduct, defendants have received and continue to use monies that rightfully belong to Plaintiff and others so situated.

36. As a legal result of these violations of §§ 17200 et seq, Plaintiff has suffered ascertainable loss – physical injury, economic losses and other costs for which defendants, jointly and severally, are liable to plaintiff in an amount treble their actual damages and for payment of attorneys' fees and costs.

37. Plaintiff requests the court to order these Defendants to disgorge all monies received from unfair business practices in California. Plaintiff also requests that the Court enjoin Defendants from continuing to provide mortgage brokerage services in California

FOURTH CAUSE OF ACTION – SURETYSHIP
(Against Defendant Great American Insurance Co.)

38. Plaintiff realleges, adopts, and incorporates the previous paragraphs as though fully set forth herein.

39. Defendant Great American Insurance Co., on June 28, 2004, issued its surety bond No. 1-76-90-93-092-CA in the amount of $50,000 and delivered said bond to the Commissioner in connection with Defendant Supreme Lending's application for a license to do business in

California. [Exhibit B]. In accordance with Sec. 50205 of the Cal. Financial Code Defendant Supreme Lending was required to maintain such bond in force *"to be used for the recovery . . . of losses or damages incurred by borrowers or consumers."*

40. Said bond provides: *"The Principal [Supreme Lending], <u>and any and all agents and employees representing the Principal</u> . . . shall honestly and faithfully apply all funds received and shall faithfully and honestly perform all obligations and undertakings under the California Residential Mortgage Lending Act . . ."* and further provides . . . *"That any person who sustains an injury covered by this bond may . . . bring an action in his or her own name upon this bond for the recovery of any damages sustained . . ."* (Emphasis added)

41. As alleged in this complaint Supreme Lending and Cripps have injured Plaintiff and Plaintiff is suing upon the bond of Great American for the damages she has sustained.

## EXEMPLARY DAMAGES
(Against Defendants Supreme Lending and Cripps)

42. Defendants, Supreme Lending and Cripps through their managing agents, committed the acts alleged herein maliciously and oppressively with the wrongful intent or in conscious disregard of the likelihood of injuring Plaintiff. Plaintiff is entitled to recover exemplary damages from Defendants in an amount according to proof.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

    (1)    For general damages in a sum according to proof at trial;

    (2)    Special damages in a sum according to proof at trial;

    (3)    For punitive damages pursuant to Civil Code § 3294;

    (4)    For treble damages pursuant to California Civil Code § 3345;

    (5)    For an award of attorney's fees pursuant to, without limitation, California

Code of Civil Procedure §1021.5 and/or California Welfare and

Institutions Code §15657.5 and/or Financial Code § 50701;

(6)     For costs of suit;

(7)     For pre-judgment interest according to law; and

(8)     For such other relief as the Court may deem proper.

DATED: July 6, 2011.                        BOURDETTE AND PARTNERS



By: /s/ Philip C. Bourdette

15

Case 1:11-cv-00200-AWI-SMS Document 7 Filed 04/14/11 Page 16 of 32

# EXHIBIT A



www.adviserinfo.sec.gov



State Regulation

**Investment Adviser Representative Public Disclosure Report**

# JESSE ALVIN CRIPPS SR

CRD# 2988628

Report #79868-45785, data current as of Wednesday, October 13, 2010.

| **Section Title** | **Page(s)** |
|---|---|
| Report Summary | 1 |
| Qualifications | 2 - 3 |
| Registration and Employment History | 4 |
| Disclosure of Final Regulatory Events | 5 - 6 |
| About this Report | 7 |


www.adviserinfo.sec.gov



State Regulation

## Investment Adviser Representative Qualifications

### REGISTRATIONS

This section provides the states and U.S. territories in which the Investment Adviser Representative (IAR) is currently registered and licensed, the category of each registration, and the date on which the registration became effective. This section also provides the physical location of each branch with which the IAR is associated for each listed employment.

This individual is not currently registered as an Investment Adviser Representative.



www.adviserinfo.sec.gov



# Investment Adviser Representative Qualifications

## PASSED INDUSTRY EXAMS

This section includes all required state securities exams that the Investment Adviser Representative (IAR) has passed. Under certain, limited circumstances, an IAR may receive a waiver of an exam requirement based on a combination of previous exams passed and qualifying work experience. Likewise, a new exam requirement may be grandfathered based on an IAR's specific qualifying work experience. Information regarding instances of exam waivers or the grandfathering of an exam requirement are not included as part of the Investment Adviser Public Disclosure (IAPD) report.

This individual has passed the following exams:

| Exam | Category | Date |
|---|---|---|
| Uniform Securities Agent State Law Examination (S63) | Series 63 | 02/20/1998 |
| Uniform Investment Adviser Law Examination (S65) | Series 65 | 02/20/1998 |

## PROFESSIONAL DESIGNATIONS

This section details that the IAR has reported 0 professional designation(s).

No information reported.



State Regulation

## Investment Adviser Representative Registration and Employment History

### PREVIOUSLY REGISTERED WITH THE FOLLOWING INVESTMENT ADVISER FIRMS

This section indicates that state registration records show this Investment Adviser Representative (IAR) previously held registrations with the following firms:

| Registration Dates | Firm Name | IARD# | Branch Location |
|---|---|---|---|
| 02/21/2002 - 02/12/2003 | MONEY CONCEPTS CAPITAL CORP | 12963 | VISALIA, CA |

### EMPLOYMENT HISTORY

This section provides up to ten years of an IAR's employment history as reported by the IAR on the most recently filed Form U4.

**Please note that the IAR is required to provide this information only while registered with an investment adviser firm and the information is not updated through Form U4 after the IAR ceases to be registered. Therefore, an employment end date of "Present" may not reflect the IAR's current employment status.**

| Employment Dates | Employer Name | | Employer Location |
|---|---|---|---|
| 10/2001 - Present | MONEY CONCEPTS CAPITAL CORP | | PALM BEACH GARDENS, FL |
| 12/1999 - 10/2001 | LOMBARD SECURITIES INCORPORATED | | EXTER, CA |


www.adviserinfo.sec.gov

State
Regulation

# Investment Adviser Representative Disclosure of Final Regulatory Events

## Disclosure of Final Regulatory Events

**What you should know and/or consider regarding any reported disclosure events:**

- Before reaching a conclusion regarding any of the information contained in this report, you should ask the Investment Adviser Representative (IAR) to clarify the specific event(s) listed, or to provide a response to any questions you may have.

## Disclosures in Investment Adviser Public Disclosure (IAPD) reports come from different sources:

- **Self-disclosure:** IARs are required to answer a series of questions on their application requesting investment adviser registration (Form U4). For example, IARs are asked whether they have been involved in certain regulatory matters.
- **Regulator/Employer postings:** In addition, regulators and firms that have employed an IAR also may contribute relevant information about such matters. All of this information is maintained in the Investment Adviser Registration Depository (IARD).



www.adviserinfo.sec.gov



State
Regulation

## DISCLOSURE EVENT DETAILS

This report provides the information exactly as it was reported to CRD by the individual, a member firm(s), and/or by securities industry regulators. Some of the specific data fields contained in the report may be blank if the information was not provided to CRD.

**Final**

Regulatory Event          1

## Regulatory Event

This section provides information regarding a final, regulatory action that was reported to CRD by the individual, a member firm, and/or a securities regulator. The event may include a final, formal proceeding initiated by a regulatory authority (e.g., a state securities agency, a self-regulatory organization, a federal regulator such as the SEC or the Commodities Futures Trading Commission (CFTC), or a foreign financial regulatory body) for a violation of investment-related rules or regulations.

### Disclosure 1 of 1

| | |
|---|---|
| **Reporting Source:** | Regulator |
| **Regulatory Action Initiated By:** | NASD |
| **Sanction(s) Sought:** | |
| **Other Sanction(s) Sought:** | |
| **Date Initiated:** | 05/02/2005 |
| **Docket/Case Number:** | C02050036 |
| **Employing firm when activity occurred which led to the regulatory action:** | LOMBARD SECURITIES INCORPORATED |
| **Product Type:** | CD(s) |
| **Other Product Type(s):** | |
| **Allegations:** | NASD CONDUCT RULES 2110 AND 2330(A) - JESSE CRIPPS RECEIVED FUNDS FROM A PUBLIC CUSTOMER WHICH THE CUSTOMER INTENDED TO BE USED FOR THE PURCHASE OF A CERTIFICATE OF DEPOSIT. HOWEVER, CRIPPS DID NOT USE THE FUNDS AS DIRECTED BY THE CUSTOMER, AND, INSTEAD, USED THEM IN A MANNER THAT DID NOT BENEFIT THE CUSTOMER. |
| **Current Status:** | Final |
| **Resolution:** | Acceptance, Waiver & Consent(AWC) |
| **Resolution Date:** | 05/02/2005 |
| **Sanctions Ordered:** | Bar |
| **Other Sanctions Ordered:** | |
| **Sanction Details:** | WITHOUT ADMITTING OR DENYING THE ALLEGATIONS, RESPONDENT CONSENTED TO THE DESCRIBED SANCTION AND TO THE ENTRY OF FINDINGS; THEREFORE, HE IS BARRED FROM ASSOCIATION WITH ANY NASD MEMBER IN ANY CAPACITY. |



www.adviserinfo.sec.gov



State Regulation

---

# About this Investment Adviser Representative Report

Investment Adviser Public Disclosure (IAPD) reports disclose information about state registered investment adviser representatives (IARs) to help investors determine whether to conduct, or continue to conduct, business with these individuals. The information contained within these reports is collected through the states' registration and licensing process. For additional information, a glossary of terms can also be found on the website of the North American Securities Administrators Association (NASAA) at http://www.nasaa.org/IAPD/Glossary.cfm.

**Who provides the information in Investment Adviser Public Disclosure (IAPD)?**
Information made available through IAPD is obtained from the Investment Adviser Registration Depository (IARD) as reported through the states' registration and licensing process. State securities regulators use Forms U4 and U5 to collect registration/licensing information for investment adviser representatives (IARs). Regulators provide information through Form U6, which is used to report certain disciplinary history about investment adviser firms and IARs.

**How current is the information contained in Investment Adviser Public Disclosure (IAPD)?**
Investment adviser firms and investment adviser representatives (IARs) are required to keep this information accurate and up-to-date (typically not later than 30 days after learning of an event). The data in IAPD is updated when an investment adviser and/or securities firm, IAR, or securities regulator submits new or revised information to IARD.

A report for an investment adviser representative (IAR) contains:

- A report summary that provides a brief overview of the IAR and his or her credentials. This summary also functions as the entry point to a more detailed report on the IAR.
- A qualifications section that includes a listing of the IAR's current registrations, or licenses, professional designations, if any, and state required exams he or she has passed.
- A previous employment section that contains two types of information:

  - a list of firms where the IAR was previously registered.
  - the IAR's employment history for the last ten years-both in and outside the investment adviser and/or securities industry -as reported by the IAR.

- A disclosure section that contains information about any customer disputes or regulatory and disciplinary events on this IAR's record. Please keep in mind a number of items may involve pending actions or allegations

**What information is NOT disclosed through Investment Adviser Public Depository (IAPD)?**
Information that has not been reported to IARD is not disclosed. Certain customer complaint information filed before March 2002 is not available in IAPD. To access this older information, please contact a state where the IAR is registered.

Additional information not disclosed includes Social Security numbers, residential history information, and physical description information.

In certain limited circumstances, most often pursuant to a court order, information is expunged from IARD.

If you have additional questions, call your state securities regulator. Contact information for state securities regulators can be found on the website of the North American Securities Administrators Association, Inc. at http://www.nasaa.org.

# EXHIBIT B

DUPLICATE
ORIGINAL

STATE OF CALIFORNIA
DEPARTMENT OF CORPORATIONS

BOND OF RESIDENTIAL MORTGAGE LENDER AND/OR SERVICER
Financial Code Section 50205

Bond No. 1-76-90-93-092-CA

KNOW ALL MEN BY THESE PRESENTS:

           Everett Financial, Inc. dba
   That we, Supreme Lending                        , as Principal, whose
address for service is:

11615 Forest Central Dr. 108 Dallas, TX 75243 ,
   (Street Address, City, State and ZIP Code)

and Great American Insurance Company , a corporation, created, organized and existing
under and by virtue of the laws of the State of    Ohio        and an admitted
Surety insurer authorized to transact a general surety business in the State of California, as Surety,
whose address for service is:

580 Walnut Street, Cincinnati, OH 45202 ,
   (Street Address, City, State and ZIP Code)

are held and firmly bound unto the Commissioner of Corporations of the State of California, for the
use thereof and for the use of any person or persons who may have a cause of action against the
Principal under the provisions of the California Residential Mortgage Lending Act and all acts
amendatory thereof and supplementary thereto now and hereafter enacted, in the total aggregate
penal sum of Fifty Thousand Dollars ($50,000), lawful money of the United States of America, to be
paid to the Commissioner of Corporations of the State of California, or to any person or persons, for
the use and benefit aforesaid, for which payment well and truly to be made, we bind ourselves, our
heirs, executors, administrators, successors and assigns, jointly and severally firmly by these
presents.

   The condition of the above obligation is such that--

   WHEREAS, The above-named Principal has made application to the Commissioner of
Corporations of the State of California for a license to engage in business under and pursuant to the
provisions of the California Residential Mortgage Lending Act, and is required under the provisions
of the California Residential Mortgage Lending Act to furnish a bond in the sum above named,
conditioned as set forth:

   NOW, THEREFORE, The Principal, and any and all agents and employees representing the
Principal, shall faithfully conform to and abide by the provisions of the California Residential

MBL 50205 (2/01)

DUPLICATE
ORIGINAL

Mortgage Lending Act and all acts amendatory thereof and supplementary thereto now and hereafter enacted, and of all rules and regulations lawfully made by the Commissioner of Corporations of the State of California under the California Residential Mortgage Lending Act and shall honestly and faithfully apply all funds received and shall faithfully and honestly perform all obligations and undertakings under the California Residential Mortgage Lending Act, and shall pay to the Commissioner of Corporations of the State of California and to any person or persons, for the use and benefit aforesaid, any and all moneys which become due or owing the Commissioner of Corporations of the State of California or to any such person or persons from the Principal under and by virtue of the provisions of the California Residential Mortgage Lending Act.

This bond is subject to the following provisions:

1. That any person who sustains an injury covered by this bond may, in addition to any other remedy that he or she may have, bring an action in his or her own name upon this bond for the recovery of any damages sustained by him or her.

2. That the total aggregate liability of the Surety or sureties herein shall be limited to the payment of Fifty Thousand Dollars ($50,000).

3. This bond may be cancelled by the Surety in accordance with the provisions of Sections 996.320 and 996.330 of the Code of Civil Procedure of the State of California.

4. That, in the event either the Principal and/or the Surety under this bond are served with notice of any action commenced against the Principal or the Surety under the bond, the Principal and Surety as each is served with notice of action shall respectively and, within 10 days, give written notice of the filing of such action to the Commissioner of Corporations of the State of California, at the Los Angeles office of the Department of Corporations.

5. That, in the event the Surety under this bond makes full or partial payment on this bond the Surety shall immediately give written notice of such full or partial payment to the Commissioner of Corporations of the State of California, at the Los Angeles office of the Department of Corporations.

6. That the effective date of this bond shall be  6-28-04

_____
Signature of Principal

Everett Financial, Inc. dba
Supreme Lending
Typed or Printed Name of Principal

Dallas, TX
_____
Executed at (City and State)

DUPLICATE
ORIGINAL

I certify (or declare) under penalty of perjury that I have executed the foregoing bond under an unrevoked power of Attorney.

Executed in ___Chicago, IL___ on ___6-28-04___
      (City and State)           (Date)

under the laws of the State of California.

Signature of Attorney-in-Fact
for Surety

COUNTERSIGNED BY

Keith Oestreich
Printed or typed name of
Attorney-in-Fact for Surety

ALL OF THE ABOVE SIGNATURES MUST BE NOTARIZED

## ACKNOWLEDGMENT BY SURETY

State of _____ Illinois _____

County of ____ Cook _____

   On the __28th_ day of _June_____ 20___04___, before me

personally came_____ Keith Oestreich _____ to me known, who,
being by me duly sworn, did depose and say: that he resides in____ Cook _
__County, Illinois ____ and that he/she is the _Attorney-in-Fact_____ of

Great American Insurance Company _____.

```
OFFICIAL SEAL
ANNITA BUTLER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 08-28-06
```

_Annita Butler_
Notary Public.

# GREAT AMERICAN INSURANCE COMPANY®

Administrative Office: 580 WALNUT STREET • CINCINNATI, OHIO 45202 • 513-369-5000 • FAX 513-723-2740

The number of persons authorized by
this power of attorney is not more than    Six

## POWER OF ATTORNEY

No. O  18005

**KNOW ALL MEN BY THESE PRESENTS:** That the GREAT AMERICAN INSURANCE COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, does hereby nominate, constitute and appoint the person or persons named below its true and lawful attorney-in-fact, for it and in its name, place and stead to execute in behalf of the said Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; provided that the liability of the said Company on any such bond, undertaking or contract of suretyship executed under this authority shall not exceed the limit stated below.

| | Name | Address | Limit of Power |
|---|---|---|---|
| Keith Oestreich | Patrick Small | all of | all |
| Charles L. Anderson | Daniel McNeal | Chicago, Illinois | Unlimited |
| Sam Ackerman | | | |
| Kim Waller | | | |

This Power of Attorney revokes all previous powers issued in behalf of the attorney(s)-in-fact named above.

IN WITNESS WHEREOF the GREAT AMERICAN INSURANCE COMPANY has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this    25th    day of    August .    2004
Attest                                                                    GREAT AMERICAN INSURANCE COMPANY

STATE OF OHIO, COUNTY OF HAMILTON - ss:

DAVID C. KITCHIN (513-412-4802)

On this    25th    day of    August, 2004 . before me personally appeared DAVID C. KITCHIN, to me known, being duly sworn, deposes and says that he resides in Cincinnati, Ohio, that he is the Divisional Senior Vice President of the Bond Division of Great American Insurance Company, the Company described in and which executed the above instrument; that he knows the seal of the said Company; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by authority of his office under the By-Laws of said Company, and that he signed his name thereto by like authority.

This Power of Attorney is granted by authority of the following resolutions adopted by the Board of Directors of Great American Insurance Company by unanimous written consent dated March 1, 1993.

*RESOLVED: That the Division President, the several Division Vice Presidents and Assistant Vice Presidents, or any one of them, be and hereby is authorized, from time to time, to appoint one or more Attorneys-in-Fact to execute on behalf of the Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment at any time.*

*RESOLVED FURTHER: That the Company seal and the signature of any of the aforesaid officers and any Secretary or Assistant Secretary of the Company may be affixed by facsimile to any power of attorney or certificate of either given for the execution of any bond, undertaking, contract or suretyship, or other written obligation in the nature thereof, such signature and seal when so used being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed.*

## CERTIFICATION

I, RONALD C. HAYES, Assistant Secretary of Great American Insurance Company, do hereby certify that the foregoing Power of Attorney and the Resolutions of the Board of Directors of March 1, 1993 have not been revoked and are now in full force and effect.

Signed and sealed this    28th    day of    June    , 2004

# EXHIBIT C

# EXHIBIT C

07 05:55p  J CRIPPS                                                                      p.2

Case 1:11-cv-00200-AWI-BAM  Document 16   Filed 07/06/11   Page 32 of 49
Case 1:11-cv-00200-AWI-SMS  Document 9   Filed 04/11/11   Page 25 of 32

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of the Borrower's spouse or other person than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to applicable law and Borrower resides in a community property state, or the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.
If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below).

*Dorothy J. Lotnero TTEE*

Borrower                                                                    Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA  [X] Conventional  [ ] Other (explain): [ ] FHA  [ ] USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 0740 |
|---|---|---|---|---|
| Amount $ 208,000.00 | Interest Rate 7.600 % | No. of Months 360 | Amortization Type: [X] Fixed Rate  [ ] GPM | [ ] Other (explain): [ ] ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & ZIP)
3332 W. Millcreek Drive, Visalia, CA 93291 County: TULARE

| Legal Description of Subject Property (attach description if necessary) See Prelim | No. of Units 1 |
|---|---|
| | Year Built 1972 |

| Purpose of Loan: | [ ] Purchase  [ ] Construction [X] Refinance  [ ] Construction-Permanent [ ] Other (explain): | Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1972 | Original Cost $ 28,900.00 | Amount Existing Liens $ 105,000.00 | Purpose of Refinance Cash-Out Other | Describe improvements [ ] made  [ ] to be made Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Dorothy Lotnero | Manner in which Title will be held A Widow | Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
Checking Savings

## III. BORROWER INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | Dorothy Lotnero | |
| Social Security Number | 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 | Social Security Number |
| Home Phone (incl. area code) | 559-734-0714 | Home Phone (incl. area code) |
| DOB (MM/DD/YYYY) | 10/26/1929 | DOB (MM/DD/YYYY) |
| Yrs. School | 14 | Yrs. School |
| Marital status | [ ] Married  [X] Unmarried (include single, divorced, widowed)  [ ] Separated | [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated |
| Dependents (not listed by Co-Borrower) | no. / ages | no. / ages |

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent No. Yrs. 20Y 3332 W. Millcreek Drive Visalia, CA 93291 | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. |
|---|---|
| Mailing Address, if different from Present Address 3332 W. Millcreek Drive Visalia, CA 93291 | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | [ ] Self Employed  Yrs. on this job | Name & Address of Employer | [ ] Self Employed  Yrs. on this job |
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

Feb 06 07 03:53p    J GRIFFS

F...ett Financial Inc. dba Supreme Ler

Case 1:11-cv-00200-AWI-BAM   Document 16   Filed 07/06/11   Page 33 of 49
Case 1:11-cv-00200-AWI-BAM   Document 16   Filed 04/14/11   Page 26 of 32

## IV. EMPLOYMENT INFORMATION

| | Borrower | | | | Co-Borrower | |
|---|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) | |
| | | Monthly Income $ | | | Monthly Income $ | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | | |

| | Borrower | | | | Co-Borrower | |
|---|---|---|---|---|---|---|
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) | |
| | | Monthly Income $ | | | Monthly Income $ | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | | |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,433.33 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 84.58 |
| Dividends/Interest | | | | Real Estate Taxes | | 50.52 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 4,000.00 | | 4,000.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | 4,000.00 | $ | 4,000.00 | Total | $ | 1,568.43 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Pension/Retirement Income | $ 4,000.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.   Completed ☒ Jointly   ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| List checking and savings accounts below | | BK OF AMER | | | |
| Name and address of Bank, S&L, or Credit Union | | | | *278.00 | *14,989.56 |
| Horizon Financial Services, Inc | | | | | |
| 2533 North Carson Street | | Acct. no. 85010006845183 | | | |
| Carson City, NV 89706 | | Name and address of Company | | $ Payment/Months | $ |
| Acct. no. HFS 06-549346138 | $ 17,000.00 | BOA MBNA | | | |
| Name and address of Bank, S&L, or Credit Union | | | | *15.00 | *14,209.00 |
| | | Acct. no. 39 | | | |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HSBC/COSTCO | | | |
| | | | | *71.00 | *2,752.00 |
| | | Acct. no. 204801-0071493202 | | | |

*R. F. L.*

## VI. ASSETS AND LIABILITIES

| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | THD/CBSD | *57.00 | *2,242.00 |
| Acct. no. | $ | Acct. no. 6035320064039413 | | |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company<br>UNION BK CA | $ Payment/Months<br>*75.00 | $<br>*828.00 |
| Life Insurance net cash value | $ | Acct. no. 475973020 | | |
| Face amount: $ | | Name and address of Company<br>CBUSASEARS | $ Payment/Months | $ |
| Subtotal Liquid Assets | $ 17,000.00 | | *19.00 | *693.00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 340,000.00 | Acct. no. 512107184631 | | |
| Vested interest in retirement fund | $ | Name and address of Company<br>See Sch Of Liabilities | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | 66.00 | 106,986.79 |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Personal Property | 25,000.00 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 382,000.00 | Net Worth (a minus b) | $ 345,209.00 | Total Liabilities b. $ 36,791.00 |

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income)<br>3332 W. Millcreek Drive<br>Visalia, CA 93291 | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | SFR | $ 340,000.00 | $ 0.00 | $ | $ 0.00 | $ 0.00 | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 340,000.00 | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| I. Other Credits (explain) | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | Yes | No | Yes | No |
| | f. Are you presently delinquent or in default on any other loan, mortgage, financial obligation, bond or loan guarantee? If "Yes," give details as described in the preceding question. | | ☐ | ☒ | ☐ | ☐ |
| | g. Are you obligated to pay alimony, child support, or separate maintenance? | | ☐ | ☒ | ☐ | ☐ |
| | h. Is any part of the down payment borrowed? | | ☐ | ☒ | ☐ | ☐ |
| | i. Are you a co-maker or endorser on a note? | | ☐ | ☒ | ☐ | ☐ |
| | j. Are you a U.S. citizen? | | ☒ | ☐ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) 203,000.00 | k. Are you a permanent resident alien? | | ☐ | ☒ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | ☒ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) 203,000.00 | m. Have you had an ownership interest in a property in the last three years? | | ☒ | ☐ | ☐ | ☐ |
| p. Cash from / to Borrower (subtract j, k, l & o from i) -54,228.87 | (1) What type of property did you own – principal residence (PR), second home (SH), or investment property (IP)? | | PR | | | |
| | (2) How did you hold title to the home – solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | | |

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges, that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Dorothy J. Lotenero_ TTEE | 2/7/07 | X | |

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | | | CO-BORROWER | ☐ I do not wish to furnish this information. | | |
|---|---|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☒ Not Hispanic or Latino | | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | |
| Race: | ☐ American Indian or Alaska native | ☐ Asian | ☐ Black or African American | Race: | ☐ American Indian or Alaska native | ☐ Asian | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☒ White | | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | |
| Sex: | ☒ Female | ☐ Male | | Sex: | ☐ Female | ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) _Jesse Crippe_ | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | | Everett Financial Inc. dba Supreme Lending |
| ☐ Face-to-face interview | Interviewer's Signature | 5020 W. Mineral King Ave. |
| ☐ Mail | | Visalia, CA 93291 |
| ☒ Telephone | Date 02/07/2007 | (P) 559-739-9199 |
| ☐ Internet | Interviewer's Phone Number (incl. area code) (559) 739-9199 | (F) 559-553-8850 |

Dorothy Lotenero

_Dorothy J. Lotenero_

'FROM HORIZON FINANCIAL SER' (TUE)FEB 8 2007 :30/ST. 14:23/No. 6800026352 P

Case 1:11-cv-00200-WML-RAM Document 16 Filed 07/06/11 Page 36 of 49
Everett Financial a/b/a Supreme Lending. Page 29 of 32

**CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. | Borrower: Dorothy Lotanero | | Agency Case Number: |
| | Co-Borrower: | | Lender Case Number: 0740 |

| Assets | Cash or Market Value | Liabilities | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company GEMB/WALMART | $ Payment/Months *27.00 | $ *625.00 |
| Acct. No. | $ | Acct. No. 6032203474699$10 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company GEMB/JCP | $ Payment/Months *15.00 | $ *335.00 |
| Acct. No. | $ | Acct. No. 7757372805 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HSBC/GOTTS | $ Payment/Months *15.00 | $ *109.00 |
| Acct. No. | $ | Acct. No. 247604-0518602249 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company KOHLS/CHASE | $ Payment/Months *8.00 | $ *8.00 |
| Acct. No. | $ | Acct. No. 35826110952 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Financial Freedom Senior | $ Payment/Months *(0.00) | $ *(105,009.76) |
| Acct. No. | $ | Acct. No. 80484 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. No. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. No. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X *Dorothy J. Lotanero* TTEE | Date 2-7-07 | Co-Borrower's Signature: X | Date |

# EXHIBIT D



Becky Hodge
Fidelity National Title
Accounting Department
DL 661-837-6303
FAX 661-833-5925

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.488 / Virus Database: 269.14.0/1046 - Release Date: 10/3/2007 10:08 AM

2



**Complaints and Other Initiating Documents**

1:11-cv-00200-AWI -SMS Lotenero v. Everett Financial Inc., dba Supreme Lending, a Texas Corporation et al

CIVIL

### U.S. District Court

### Eastern District of California - Live System

## Notice of Electronic Filing

The following transaction was entered by Bourdette, Philip on 4/14/2011 at 9:35 AM PDT and filed on 4/14/2011

**Case Name:**          Lotenero v. Everett Financial Inc., dba Supreme Lending, a Texas Corporation et al
**Case Number:**       1:11-cv-00200-AWI -SMS
**Filer:**              Dorothy Lotenero
**Document Number:** 7

**Docket Text:**
**FIRST AMENDED COMPLAINT against Jesse Alvin Cripps, Sr, Everett Financial Inc., Great
American Insurance Co. by Dorothy Lotenero.(Bourdette, Philip)**


**1:11-cv-00200-AWI -SMS Notice has been electronically mailed to:**

Philip C. Bourdette    pcbb@bourdettelaw.com

**1:11-cv-00200-AWI -SMS Electronically filed documents must be served conventionally by the filer to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1064943537 [Date=4/14/2011] [FileNumber=4598440-0
] [9806078db875fea94922b9a8abef7e1a7ca6b1dd89336e78c2ffd96a1f7c33e39d6
c83d7dc6e970e56894ba63f40803b91bf7ba74680b9dc43d58b01f787b714]]

# EXHIBIT E

Case 1:11-cv-00200-AWI-BAM Document 16 Filed 04/06/11 Page 42 of 49

# VISALIA POLICE DEPARTMENT

ORIGINAL 1591

| | | | | |
|---|---|---|---|---|
| | 2. DATE/TIME REPORTED | 09 | 11 07 | 1615 |

| 3. OFFENSE 503 P.C. | 4. TYPE EMBEZZLEMENT | 5. LOCATION OF OFFENSE UNKNOWN | | 1. REPORT NO. 07-15209 |

| 6. RD 7009 | 7. BEAT 25 | 8. SHIFT 2 | 9. DIV. 1 | 10. NO. OF VIC | 11. DATE AND TIME OCCURRED | M 08 / 09 | D 17 / 11 | Y 07 / 07 | T / | 12. STOLEN PROPERTY: $13,323.64 |
| | | | | | | | | | | DAMAGED PROP.: $ 0 |

CODES: V - VICTIM O - OWNER W - WITNESS F - FINDER RP - REPORTING PERSON D - DRIVER

| 13. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 14. CODE | 15. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 16. CODE |
|---|---|---|---|
| | | | |
| 17. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 18. CODE | 19. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 20. CODE |
| | | | |
| 21. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 22. CODE | 23. NAME (LAST, FIRST, MIDDLE, FIRM IF BUSINESS) | 24. CODE |
| | | | |

| 25. VEHICLE ☐ SUSPECT'S ☐ VICTIM'S | 26. YEAR | 27. MAKE | 28. MODEL | 29. BODY TYPE | 30. COLOR | 31. LICENSE # | 32. STATE |
|---|---|---|---|---|---|---|---|

33. ADDITIONAL VEHICLE DESCRIPTION:

34. DAMAGED PROPERTY DESCRIPTION:

| 35. STATUS ☐ LOST ERED ☐ SAFE-KEEPING | 36. QTY | 37. ARTICLE NAME | 38. BRAND MAKE OR MANUFACTURER | 39. MODEL NAME AND NUMBER | 40. SERIAL NUMBER | 41. DESCRIPTION | 42. VALUE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

CONTROLLED DOCUMENT
CONFIDENTIAL INFORMATION
TO BE USED BY CRIMINAL AGENCIES ONLY

43. ADDITIONAL PROPERTY: ☐ YES ☐ NO

| 44. FIREARMS | BRAND NAME | CALIBER | SERIAL NO. | TYPE (PIST, RIF, S/GUN) | CATEGORY (REV, AUTO, CARB) | MISC. INFO |
|---|---|---|---|---|---|---|
| | BRAND NAME | CALIBER | SERIAL NO. | TYPE (PIST, RIF, S/GUN) | CATEGORY (REV, AUTO, CARB) | MISC. INFO |

| 45. BICYCLE | 46. BRAND NAME | 47. MODEL | 48. LICENSE # | 49. SERIAL # | 50. # OF GEARS | 51. WHEEL SIZE (INCH) | 52. COLOR | 53. TRIM COLOR | 54. MISC |
|---|---|---|---|---|---|---|---|---|---|

VISALIA POLICE DEPT.

| 55. DETAILS/NARRATIVE: REFER TO: ☐ DICTATED OR ☐ WRITTEN/TYPED NARRATIVE | CV 803 (12/97) |
|---|---|

56. I, _____, HAVING BEEN INFORMED OF MY LEGAL RIGHTS IN EFFECTING AN ARREST AS A CITIZEN, AND HAVING EXERCISED THOSE RIGHTS, DO PROMISE TO APPEAR BEFORE THE MAGISTRATE OF THE VISALIA MUNICIPAL COURT TO SIGN A COMPLAINT AGAINST_____, I FULLY REALIZE THAT A FAILURE ON MY PART TO SIGN SAID COMPLAINT AGAINST THE AFOREMENTIONED PERSON(S) WILL RESULT IN THE IMMEDIATE RELEASE OF SUCH INDIVIDUAL(S).

| 57. COPIES TO: DIST ATTY_____ (DATE) | JUVENILE_____ (DATE) | OTHER FBI Fresno (DATE) | 58. REPORTING OFFICER / ID # T. HAENER A154 |
|---|---|---|---|

VPD# 101
(Revised 5/07)

10-18-07BA

VISALIA POLICE DEPARTMENT
303 S. JOHNSON STREET
VISALIA, CALIF. 93291

ORIGINAL T391

CASE NO.
C07-15209

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| 503 PC | EMBEZZLEMENT | |

| VICTIM (S) NAMES (S) | ADDRESS | PHONE NO. |
|---|---|---|
| LOTENERO, DOROTHY J. | | |

On 9/18/07, at approximately 1530 hours,

I was patrol division for the Visalia Police Department and assigned out of the North Precinct. I was dispatched to the Visalia Police Department Headquarters to take a report of embezzlement. Upon my arrival there I made contact with the victim who was sitting in the lobby who identified herself as Dorothy Juanita Lotenero.

Upon V/Lotenero introducing herself she stated that she was provided report no. 07-15209 by female by _____ that worked at a lending company where the suspect had previously been employed whom she verbally identified as _____

Upon this advisement I advised her that I was familiar with this case and advised her that at this time I would take any pertinent information, in regard to her case and add it to the already list that is compiling in regard to this large embezzlement.

V/Lotenero at that time stated that she had met S_____ through her church where he was a pastor. V/Lotenero stated that she had spoken with S_____ in regard to her household finance loan due to the fact that she had been advised by her lending company that they were going to repossess the house. V/Lotenero stated that S_____ advised her that he could do a "reverse mortgage" on her residence and get her a large amount of money out of her residence and that she could pay her bills off and also pay off the first reverse mortgage that she had done that was outstanding.

V/Lotenero stated that she believed this was a good idea and that she believed that she could trust S_____ due to the fact that he attended her church, therefore, she proceeded to have his financial company do the financial documents and loan on her residence. V/Lotenero stated that after S_____ did the reverse mortgage on her residence she paid several bills off and was left with $48,000. V/Lotenero stated that S_____ advised her that he would put the left over money in a savings account and invest it for her that she would be able to live "debt free" and that the payments would be automatically made off the interest that she made from her investments.

| REPORTING/RECORDING OFFICER | TYPED BY | DATE |
|---|---|---|
| HAENER, A154 | MG/200 | 09/20/07 |

| FURTHER ACTION | COPIES TO | ( ) T-BOLT | REVIEWED_____ |
|---|---|---|---|
| ( ) YES | ( ) DETECTIVE | (X) OTHER FBI Fresno | |
| ( ) NO | ( ) DISTRICT ATTORNEY | ( ) JUVENILE | LASERFICHED |

1

CONTROLLED
CONFIDENTIAL INFORMATION
TO BE USED BY CRIMINAL AGENCIES ONLY

| VISALIA POLICE DEPARTMENT 303 S. JOHNSON STREET VISALIA, CALIF. 93291 | ORIGINAL T391 | CASE NO. C07-15209 |
|---|---|---|

| CODE SECTION | CRIME | CLASSIFICATION |
|---|---|---|
| 503 PC | EMBEZZLEMENT | |

| VICTIM (S) NAMES (S) | ADDRESS | PHONE NO. |
|---|---|---|

LOTENERO, DOROTHY J.

V/Lotenero stated that she did in good faith allow S/CRIPPS to invest this money by putting it into a savings account for her to be used in investments. V/Lotenero stated that she believed that her loan was subsequently sold off to Fidelity National Title Company. V/Lotenero stated that she further believed that the savings account number was with Bank of America,

V/Lotenero stated that approximately a couple of months ago she began receiving information from the title company that the loan was not being paid for. V/Lotenero stated that she contacted S̲. ̲ ̲ ̲ ̲ and advised him of the above, at which point she was later told by S̲. ̲ ̲ ̲ that he had taken care of everything and that it was a big misunderstanding.

V/Lotenero stated upon being advised this by several other victims that attend their church she checked the account number that was provide above and found out that there was $48,251.88 missing from the account.

CONTROLLED DOCUMENT

CONFIDENTIAL INFORMATION
TO BE USED BY CRIMINAL AGENCIES ONLY

TO _____

AGENCY _____

BY _____

DATE _____

VISALIA POLICE DEPT
CV 803 (12/07)

No further information at this time.

| REPORTING/RECORDING OFFICER HAENER, A154 | TYPED BY MG/200 | DATE 09/20/07 |
|---|---|---|

| FURTHER ACTION | COPIES TO | | REVIEWED ____ |
|---|---|---|---|
| ( ) YES | ( ) DETECTIVE | ( ) T-BOLT | |
| ( ) NO | ( ) DISTRICT ATTORNEY | (x) OTHER | |
| | | ( ) JUVENILE | LASERFICHED |

2

# EXHIBIT F



# Fidelity National Title Company
## OF CALIFORNIA

1770 West Walnut Avenue, Visalia, CA 93277
559 733-3962 • FAX 559 732-9026

**DATE:** February 13, 2007
**ESCROW NO.:** 07-784410-SC
**LOCATE NO.:** CAFNT0954-0954-0001-0000784410
**ESCROW OFFICER:** Susy Correa

**TIME:** 11:44 AM

**CLOSING DATE:** February 13, 2007

## BORROWER FINAL CLOSING STATEMENT

**LENDER:** World Savings
**BORROWER:** The Trust of Dorothy Lotenero, dated December 31, 1993
**PROPERTY:** 3332 West Mill Creek Drive, Visalia, CA 93291

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **FINANCIAL:** | | |
| New 1st Trust Deed to World Savings | | 203,000.00 |
| | | |
| **TITLE CHARGES:** | | |
| 06-ALTA Loan w/Form 1 - 1992 for $203,000.00 | 625.00 | |
| Endorsement Fee(s) | 35.00 | |
| Recording Trust Deed(s) | 57.00 | |
| | | |
| **ESCROW CHARGES:** | | |
| Escrow Fee to Fidelity National Title | 250.00 | |
| Doc Prep Fees to Fidelity National Title email loan documents | 75.00 | |
| Notary Fees | 70.00 | |
| Extra Check Charge 10 checks | 100.00 | |
| UPS Delivery Fee delivery of loan documents to lender | 10.45 | |
| Escrow Fees-AG Settlement Discount | | 20.00 |
| Cal Overnight Fee delivery of payoff | 4.60 | |
| | | |
| **NEW LOAN CHARGES - World Savings** | | |
| **Total Loan Charges: $4,581.32** | | |
| Appraisal Fee to World Savings | 100.00 | |
| Broker Fee $3,045.00 POC to Supreme Lending dba Everett Financial | | |
| Mortgage Broker Fee 1% plus $1,295.00 to Supreme Lending dba Everett Financial | 3,325.00 | |
| Document Preparation Fee to World Savings | 50.00 | |
| Flood Zone Determination Fee to First American Flood Data Services | 3.00 | |
| Flood Zone Ongoing Monitoring Fee to First American Flood Data Services | 9.00 | |
| Funding Fee to World Savings | 50.00 | |
| Processing Fee to World Savings | 307.00 | |
| Tax Service Fee to First American Real Estate Tax Service | 61.00 | |
| Credit Report Fee 3.85 paid by lender POC to World Savings | | |
| Interest at $42.27 per day from 2/13/2007 to 3/1/2007 to World Savings | 676.32 | |
| | | |
| **PAYOFFS - Financial Freedom Senior Funding Corporation** | | |
| **Total Payoff $107,817.77** | | |
| Principal Balance to Financial Freedom Senior Funding Corporation | 69,580.61 | |
| Interest Accrued to Financial Freedom Senior Funding Corporation | 29,724.92 | |
| Initial MIP to Financial Freedom Senior Funding Corporation | 2,375.00 | |
| Total Periodic MIP to Financial Freedom Senior Funding Corporation | 3,197.24 | |
| Monthly Servicing Fee to Financial Freedom Senior Funding Corporation | 2,940.00 | |
| | | |
| **MISCELLANEOUS:** | | |
| Bank of America for misc. acct#65010006845183 | 14,863.88 | |
| Bank of America for misc. acct#74975418081539 | 17,481.96 | |
| Retail Services for misc. acct#7111810071493202 | 2,826.88 | |
| Citicards for misc.acct#6035320064039413 | 2,315.31 | |
| Union Bank for misc.acct#475973020 | 828.03 | |
| Sears Credit Cards for misc. acct#5121071846319741 | 771.22 | |

**Good Faith Estimate**

(Not a Loan Commitment)

Date: 01/26/2007

This Good Faith Estimate is being provided by a mortgage broker, and no lender has yet been contacted. A lender will provide you with an additional Good Faith Estimate within three business days of receipt of your loan application.

| GFE Provided By: | Subject Property: | Borrower(s): |
|---|---|---|
| Everett Financial Ind. dba Supreme Lending<br>9439 W. Mineral King Ave,<br>Visalia, CA 93291<br>Jesse A. Crispe Sr.   559-739-6199 | 3352 W. Millbrook Drive<br>Visalia, CA 93291 | Dorothy Letenero |

| | |
|---|---|
| Loan Number: 8570700400034 | Interest Rate: 7.900 | Type of Loan: Conventional | Base Loan Amt: 203,000.00 |
| Loan Program: | Term: 360 | Sales Price: | Total Loan Amt: 203,000.00 |

| 800 | Items Payable in Connection with the Loan | | 1100 | Title Charges | |
|---|---|---|---|---|---|
| 801 A | Loan Origination Fee @  1.000% + | 2,030.00 | 1101 A | Settlement or Closing Fee | 250.00 |
| 802 A | Loan Discount Fee @         % + | | 1102 | Abstract or Title Search | |
| 803 | Appraisal Fee | 400.00 | 1103 | Title Examination | |
| 804 | Credit Report | 25.00 | 1104 | Title Insurance Binder | |
| 805 A | Lender's Inspection Fee | | 1105 A | Document Preparation Fee | 75.00 |
| 806 A | 3rd Application Fee | | 1106 | Notary Fee | 60.00 |
| 807 A | Assumption Fee | | 1107 | Attorney Fee | |
| 808 A | Mortgage Broker Fee @      % + | | 1108 | Title Insurance Fee | 835.00 |
| 809 A | Tax Servicing Fee | 81.00 | 1109 | Owner's Title Policy | |
| 810 A | Processing Fee | 783.00 | 1110 A | Title Company Courier Fee | 50.00 |
| 811 A | Underwriting Fee | | 1111 | Endorsement Fee | 25.00 |
| 812 A | Wire Transfer Fee | | 1112 | Draw Deed | 20.00 |
| 813 A | Administrative Fee | 350.00 | 1113 | Federal Express | 13.50 |
| 814 A | Flood Cert | 12.00 | 1114 | Cal Overnight Payoff | 4.50 |
| 815 A | World Savings Processing Fee | 297.00 | | | |
| 816 A | World Savings Review of Appraisal | 100.00 | 1200 | Government Recording and Transfer Charges | |
| 817 A | World Savings Document Preparation | 60.00 | 1201 | Recording Fee | 75.00 |
| 818 A | | | 1202 | Local Tax/Stamps | |
| 819 A | | | 1203 | State Tax/Stamps | |
| 820 A | | | 1204 | | |
| 821 A | | | 1205 | | |
| 822 A | | | | | |
| 823 A | | | 1300 | Additional Settlement Charges | |
| Compensation to Broker from Lender (Not Paid out of Applicant's Loan Proceeds) | | | 1301 | Survey to: | |
| 824 | YSP 0 - 4% | | 1302 | Termite/Pest Inspection | |
| 826 | 1.500 %  $  3,045.00 | | 1303 | | |
| | | | 1304 | | |
| | | | 1305 | | |
| | | | 1306 | | |
| | | | 1307 | | |
| | | | 1308 | | |
| | | | 1309 | | |
| | | | Total Estimated Closing Costs | | 5,121.10 |

| 900 | Items Required by Lender to be Paid in Advance | | 1000 | Reserves Deposited with Lender | |
|---|---|---|---|---|---|
| 901 A | Prepaid Interest 15 days @ 43.2666 | 634.02 | 1001 | Hazard Ins       mths @   84.58 | |
| 902 A | Mortgage Insurance Premium | | 1002 A | Mortgage Ins    mths @ | |
| 903 | Hazard Insurance Premium | | 1003 | City Prop. Tax    mths @ | |
| 904 | County Property Tax | | 1004 | Property Tax      mths @   90.52 | |
| 905 | VA Funding Fee | | 1005 | Flood Ins          mths @ | |
| 906 | Flood Insurance Premium | | 1007 | mths @ | |
| 907 | | | 1008 | mths @ | |
| 908 | | | 1009 | mths @ | |
| | | | 1010 | Aggregate Analysis | |
| | | | Total Estimated Reserve/Prepaid Costs | | 634.02 |

| Total Estimated Monthly Payment | | | Total Estimated Funds Needed to Close | | |
|---|---|---|---|---|---|
| Principal & Interest | | 1,473.33 | Purchase Price/Payoff | (+) | 203,000.00 |
| Other Financing (P & I) | | | Total Estimated Closing Costs | (+) | 5,121.10 |
| Hazard Insurance | | 84.58 | Total Estimated Reserve/Prepaid Costs | (+) | 634.02 |
| Real Estate Taxes | | 90.52 | Discounts (if borrower will pay) | (+) | |
| Mortgage Insurance | | | FHA UFMIP/VA Funding Fee | (+) | |
| HOA Dues | | | Total Costs | (=) | 208,771.13 |
| Other | | | | | |
| Total Monthly Payment | | 1,648.43 | Loan Amount | (-) | 203,000.00 |
| | | | Total Non-Borrower Paid Closing Costs | (-) | |
| Closing Costs Summary | | | FHA UFMIP/VA Fee Financed | (-) | |
| Total Borrower Paid Closing Costs | (A) | 5,755.12 | | (-) | |
| | | | | (-) | |
| | | | | (-) | |
| | | | First Mortgage | (-) | |
| | | | Second Mortgage (Subordinate Financing) | (-) | |
| Total Non-Borrower Paid Closing Costs | (b) | | Closing Costs from 2nd Lien | (-) | |
| | | | Total Credits | (d) | 203,000.00 |
| Total Closing Costs | (a+b) | 5,755.12 | Cash to borrower | (c – d) | 5,220.61 |

| | | | |
|---|---|---|---|
| S – Paid by Seller | B – Paid by Broker | A – APR Affected by Cost | |
| SF – Split by Seller & Others | L – Paid by Lender | O – Paid by Other | P – Paid Outside Closing (POC) |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your Mortgage Broker or lender if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of a copy of the Special Information Booklet "Settlement Costs".

_Dorothy J. Letenero_    TTEE   2-7-07

| | |
|---|---|
| Borrower   Dorothy Letenero   Date | Co-borrower   Date |

GFE Broker Expanded 07/05 – Encompass™ from Ellie Mae – www.elliemae.com

Lender/Broker: Everett Financial Inc. dba Supreme Lending   Loan Number: 5570701000034   Date Prepared: 01/08/2007

Borrower(s): Dorothy Letenero   Property Address: 3332 W. Millcreek Drive
Visalia, CA 93291

[X] Initial Disclosure estimated at time of application   [ ] Final Disclosure based on contract terms

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you assuming the annual percentage rate does not change. | The amount of credit provided to you or on your behalf as of loan closing. | The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
| E | E | E | E |
| 7.831 % | $ 317,475.62 | $ 198,525.97 | $ 516,001.59 |

Your Payment Schedule Will Be:

| Number of Payments | * Amount of Payments | Monthly Payments Are Due Beginning | Number of Payments | * Amount of Payments | Monthly Payments Are Due Beginning |
|---|---|---|---|---|---|
| 359 | 1,433.33 | 03/01/2007 | | | |
| 1 | 1,438.12 | 02/01/2037 | | | |

* Includes mortgage insurance premium, excludes taxes, hazard insurance and flood insurance.

[ ] Demand Feature: This loan transaction has a demand feature.

[ ] Required Deposit: The annual percentage rate does not take into account your required deposit.

[ ] Variable Rate Feature: Your loan contains a Variable Rate Feature. Disclosures about the Variable Rate Feature have been provided to you separately.    30 Year Fixed Rate Mortgage

Security Interest: You are giving a security interest in: 3332 W. Millcreek Drive, Visalia CA 93291
[ ] the goods or property being purchased.   [X] real property you already own.

Filing or Recording Fees: $ 60.00

Late Charge: If a payment is more than  15  days late, you will be charged $  71.87 / 5.000 %
of the principal and interest overdue.

Prepayment: If you pay off your loan early, you
[X] may   [ ] will not   have to pay a penalty.
[ ] may   [X] will not   be entitled to a refund of part of the finance charge.

Insurance: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

This loan transaction requires the following insurance:
[X] Hazard Insurance   [ ] Flood Insurance   [ ] Credit Insurance   [ ] Credit Life Insurance   [ ] MMI   [ ] PMI
Borrower(s) may obtain hazard and flood insurance through any person of his/her choice, provided said carrier meets the requirements of the Lender. If Borrower desires Property Insurance to be obtained through the Lender's designated agency, the cost will be set forth in a separate insurance statement furnished by the Lender.
[ ] If you purchase   insurance from creditor, you will pay $   for a one-year term.

Assumption: Someone buying your house:
[ ] may   [ ] may, subject to conditions,   [X] may not assume the remainder of your loan on the original terms.

See your contract documents for additional information regarding nonpayment, default, right to accelerate the maturity of the obligation, prepayment rebates and penalties, and the Lender's policy regarding assumption of the obligation.

[X] All dates and numerical disclosures except late payment disclosures are estimates.   E   means an estimate.

The undersigned hereby acknowledge receiving and reading a completed copy of this disclosure along with copies of the documents provided. The delivery and signing of this disclosure does not constitute an obligation on the part of the lender to make, or the Borrower(s) to accept, the loan as identified.

Read, acknowledged and accepted this   8   day of   January, 2007   By: Jesse A. Cripps Sr.

_Dorothy J. Letenero TTEE_  1/7/07
Borrower   Date   Co-borrower   Date
Dorothy Letenero
FND02 - FL 87795 – Encompass™ from Elle Mae - www.elliemae.com

FROM HORIZON FINANCIAL SERVICES

## Mortgage Loan Disclosure Statement/Good Faith Estimate

Borrower's Name(s): X Dorothy Lotmore

Real Property Collateral: The intended security for this proposed loan will be a Deed of Trust on (street address or legal description).
3355 W. Millbrook Drive Visalia, CA 93291

This Joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by Everett Financial Inc. dba Supreme Lending a real estate broker acting as a mortgage broker pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) and similar California law. In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom your loan application will be delivered is:

☐ Unknown   ☒ Everett Financial Inc. dba Supreme Lending /RAQA _____ (Name of lender, if known)

## Good Faith Estimate of Closing Costs

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions, costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed and any additional items charged will be listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 Settlement Statement which you will receive at settlement if the transaction is subject to RESPA. The HUD-1 Settlement Statement contains the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page two of this form you are also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | ITEM | | | Paid to Others | Paid to Broker |
|---|---|---|---|---|---|
| 800 | Items Paid in Connection with Loan | | | | |
| 801 | Lender's Loan Origination Fee | | | $ | $ 2,030.00 |
| 802 | Lender's Loan Discount Fee | | | $ | $ |
| 803 | Appraisal Fee | | | $ 400.00 | $ |
| 804 | Credit Report | | | $ 25.00 | $ |
| 805 | Lender's Inspection Fee | | | $ | $ |
| 806 | All Application Fee | | | $ | $ |
| 807 | Assumption Fee | | | $ | $ |
| 808 | Mortgage Broker Commission/Fee | | | $ | $ |
| 809 | Tax Service Fee | | | $ 81.00 | $ |
| 810 | Processing Fee | | | $ | $ 595.00 |
| 811 | Underwriting Fee | | | $ | $ |
| 812 | Wire Transfer Fee | | | $ | $ |
| 813 | Administrative Fee | | | $ 300.00 | $ |
| 814 | Flood Cert | | | $ 12.00 | $ |
| 815 | World Savings Processing Fee | | | $ 107.00 | $ |
| 816 | World Savings Review of Appraisal | | | $ 100.00 | $ |
| 817 | World Savings Document Preparation | | | $ 50.00 | $ |
| 818 | | | | $ | $ |
| 819 | | | | $ | $ |
| 820 | | | | $ | $ |
| 821 | | | | $ | $ |
| 900 | Items Required by Lender to be Paid in Advance | | | | |
| 901 | Interest for 15 days at $ 42.2685 | per day | | $ 634.03 | $ |
| 902 | Mortgage Insurance Premium | | | $ | $ |
| 903 | Hazard Insurance Premium | | | $ | $ |
| 904 | County Property Tax | | | $ | $ |
| 905 | VA Funding Fee | | | $ | $ |
| 906 | Flood Insurance | | | $ | $ |
| 907 | | | | $ | $ |
| 1000 | Reserves Deposited with Lender | | | | |
| 1001 | Hazard Insurance | months at $ 84.58 /mo. | | $ | $ |
| 1002 | Mortgage Insurance | months at $ /mo. | | $ | $ |
| 1003 | City Prop. Tax | months at $ /mo. | | $ | $ |
| 1004 | Co. Property Taxes | months at $ 50.52 /mo. | | $ | $ |
| 1005 | Flood Insurance | months at $ /mo. | | $ | $ |
| 1006 | | months at $ /mo. | | $ | $ |
| 1007 | | months at $ /mo. | | $ | $ |
| 1008 | | months at $ /mo. | | $ | $ |
| 1009 | | months at $ /mo. | | $ | $ |
| 1010 | Aggregate Analysis | | | $ | $ |
| 1100 | Title Charges | | | | |
| 1101 | Settlement or Closing/Escrow Fee | | | $ 250.00 | $ |
| 1105 | Document Preparation Fee | | | $ 75.00 | $ |
| 1106 | Notary Fee | | | $ 40.00 | $ |
| 1107 | Attorney Fee | | | $ | $ |
| 1108 | Title Insurance | | | $ 625.00 | $ |
| 1109 | Owner's Title Policy | | | $ | $ |
| 1110 | Additional Items | | | $ 176.10 | $ |
| 1200 | Government Recording and Transfer Fees | | | | |
| 1201 | Recording Fees | | | $ 75.00 | $ |
| 1202 | City/County Tax/Stamps | | | $ | $ |
| 1203 | State Tax/Stamps | | | $ | $ |
| 1204 | | | | $ | $ |
| 1205 | | | | $ | $ |
| 1300 | Additional Settlement Charges | | | | |
| 1301 | Survey fee | | | $ | $ |
| 1302 | Pest Inspection | | | $ | $ |
| 1303 | | | | $ | $ |
| 1304 | | | | $ | $ |
| 1305 | | | | $ | $ |
| 1306 | | | | $ | $ |
| | Subtotals of Initial Fees, Commissions, Costs and Expenses | | | $ 3,130.13 | $ 2,625.00 |
| | Total of Initial Fees, Commissions, Costs and Expenses | | | $ | 5,755.13 |

Compensation to Broker (Not Paid Out of Loan Proceeds)
Mortgage Broker Commission/Fee $
Any Additional Compensation from Lender   ☐ No   ☒ Yes   $ 3,045.00 (if known)

GFE CA REMS p1 03/05 – Encompass™ from Ellie Mae – www.elliemae.com    MLDB682051597